# Johns *et al. v.* McLester *et al.*

*Bill in Equity by Stockholders of a Corporation to have a Trust Declared in Corporate Property and to be allowed to redeem said Property.*

1. *Right of stockholder to file bill to redress corporate wrongs; what must be shown.*—Before an individual stockholder of a corporation can maintain a suit in his own name to redress alleged corporate wrongs, he must aver in his bill and show that he has done all things in his power to obtain within the corporation itself a redress of the wrongs complained of, that he has made an honest effort to get the governing body of the corporation to remedy the wrong, and failing, that he then applied to the stockholders as a body to take action towards redressing the grievances complained of.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. J. C. CARMICHAEL.

The bill in this case was filed by the appellees, Nannie S. McLester and three other person on behalf of themselves and such others of the stockholders of the Woodlawn Cemetery Company as would make them party to the suit and share the expensese thereof, against L. W. Johns and the Woodlawn Cemetery Company.

It was averred in the bill that the complainants were *bona fide* stockholders of the Woodlawn Cemetery Company, a corporation organized under the laws of the State of Alabama; that on April 10, 1895, the Woodlawn Cemetery Company executed a deed of trust on

all of its land for $4,500 to secure 9 notes of $500 each with interest at 8 per cent., which notes were to become due 12 months after date; that of these notes L. W. Johns took five of them and one J. A. VanHoose took four of them; that interest was paid on said notes for one year, and by agreement with the holders of the same the notes were extended for one year further by the payment of interest. The bill then avers the following facts: The loan was authorized by the company and interest was paid on the same for a year, and an extension made for another year. On September 7, 1897, the trustee R. A. McAdory, was instructed to advertise and sell the lands described in the deed of trust, and that he did so advertise the same. The defendant, L. W. Johns, had become the owner of the notes secured by the deed of trust, he having purchased four of the notes from J. A. VanHoose, with the express understanding and agreement that he would stop the sale of the property and wait another year on the Company. This he failed or refused to do, and ordered the trustee to make the sale under the deed of trust. The agreement to postpone the sale was part of the consideration paid for the notes sold to L. W. Johns. A meeting of the board of directors was called, and the president or secretary or both were authorized to negotiate a loan, at the legal rate, and take up the notes held by Johns and stop the sale. Complainants were not present at any of the meetings, and only learned of the facts connected with the transaction within a year prior to the filing of the bill in this cause. On the day the sale was advertised to take place, J. A. VanHoose and W. R. Houghton, two of the stockholders of the company took $4,900 in gold to A. C. Edwards, the secretary of the company and offered to lend it to the company under the resolution that had been passed by the board of directors. Edwards refused to make the loan. They took the gold to E. Erswell, president of the company, and demanded that he receive it and take up the Johns' notes, but Erswell refused to do it. They then offered the money to Johns, and he refused to take it. They

then tried to get Erswell to receive it again and he refused. The bill charges that Johns and Erswell conspired together to obtain possession of the property of the Woodlawn Company and sets out the facts in full. The sale was made and the property was purchased by L. W. Johns. After the sale, Erswell became the agent of Johns in selling and disposing of the property. He had all the books of the company, and refused to let the stockholders inspect them, and that Erswell and the board of directors never took any steps towards redeeming the property, although the property of the Woodlawn Cemetery Company is worth greatly more than the amount required to redeem the same from the said L. W. Johns.

It was then averred in the bill that several of the stockholders of the Woodlawn Cemetery Company "frequently called upon the president and board of directors to take steps to pay off the indebtedness of the company and prevent the said L. W. Johns from getting possession of the same, but nothing looking to that end was ever done;" that on October 17, 1899, J. A. VanHoose addressed a communication to E. Erswell, president of the Woodlawn Cemetery Company "demanding of him that he take steps to redeem the property of the Woodlawn Cemetery Company, and the said J. A. VanHoose offered to loan said company the money to redeem said property, but the said Erswell paid no attention to said VanHoose's communication and took no steps whatever towards redeeming said property." A copy of this letter was attached as an exhibit to the bill. It was then further averred in the bill that said J. A. VanHoose "on behalf of the stockholders made a demand on said secretary and board of directors of said company for the same purpose," copies of which letters were attached as exhibits to the bill; that these demands were completely ignored, and neither the president, nor secretary, nor board of directors, took steps towards redeeming the property of said company.

It was then further averred in the bill that the sale was void and fraudulent on account of the collusion of Erswell and Johns and that their collusive conduct

was an abuse of the power of sale contained in the mortgage and a violation of their obligations to the obligor corporation, the Woodlawn Cemetery Company, and created a constructive trust on said property in the hands of the said L. W. Johns; that the said Johns, after obtaining possession of the property furnished false and fictitious statements of improvements claimed to have been made by him, for the purpose of preventing the redemption of the said property. The bill then, after averring and setting out the facts showing that Johns and Erswell conspired together to get possession of the property of the Woodlawn Cemetery Company, then avers a willingness on the part of the complainants to pay Johns whatever is owing him by the Woodlawn Cemetery Company, and further avers that complainants were ignorant of the fraudulent conduct of the said Erswell and Johns until 12 months prior to the filing of the bill. It was also averred in the bill that said J. A. VanHoose as a stockhlder in the Woodlawn Cemetery Company, and several of his associates not including your orators, believing that they had a right to redeem the property of the Woodlawn Cemetery Company, for and on behalf of said company, made an effort to redeem the said property from the said L. W. Johns, through the board of directors of said company, and its president, E. Erswell, but were unable to get the said Erswell, or any of the directors, to do anything or attempt to redeem said property from the said Johns, although the said stockholders had the money and were amply able and willing to redeem the property and pay all costs and expenses and legal charges, and the said L. W. Johns refused to accept the money that was offered to him to redeem said property, though the amount offered was more than enough to repay him the money he had paid for said property, with all costs and expenses and charges."

It was then further averred "that on the 20th day of January, 1900, the said J. A. VanHoose, a stockholder of the Woodlawn Cemetery Company on behalf of himself and all other stockholders of said company, ad

dressed a letter to E. Erswell, president of the Wood-lawn Cemetery Company, demanding him as president of the said company and a director of the same, to take such action as was necessary to have the sale of the property of the Woodlawn Cemetery Company, made by R. A. McAdory as trustee, on October 26th, 1897, to L. W. Johns, set aside on the ground of fraud on the part of E. Erswell, L. W. Johns, *et al.* and demanding that a bill be filed by the Woodlawn Cemetery Company against the said L. W. Johns, *et al.* for the purpose of having said sale set aside. A copy of said letter is hereto attached, marked Exhibit "F" and made a part of the bill of complaint. Demands were also made upon A. C. Edwards, secretary of said company, and each of the directors of said company that the said bill be filed to have said sale set aside, and orator avers that no at-tention whatever was paid to said demand, and no steps were taken to have said sale set aside."

The prayer of the bill was that a constructive trust be declared upon the property in the hands of L. W. Johns in favor of the Woodlawn Cemetery Company, and that said sale be cancelled and set aside and de-clared null and void. That said L. W. Johns be de-clared a trustee for the Woodlawn Cemetery Company; that a reference be held by the register to ascertain and determine what amount, if any, was due said L. W. Johns on account of said notes held by him against the Woodlawn Cemetery Company, and that it be decreed that when said L. W. Johns has been paid the amount ascertained to be due him by the register, on account of said notes that he be required to reconvey said lands of the Woodlawn Cemetery Company to said company. There was also a prayer for general relief.

The defendant L. W. Johns demurred to the bill upon many grounds, among which were the following: "1. Because the alleged wrong sought to be redressed, is a wrong to the corporation, the Woodlawn Cemetery Company; that the said bill fails to show that com-plainants, prior to the filing thereof, made any efforts with the managing body of said corporation to induce remedial action on their part in the name of the corpo-

ration, and fails to show facts sufficient to excuse such effort. 2. Because said bill fails to allege that any request had been made on the managing board of directors of the Woodlawn Cemetery Company, prior to the filing of said bill to redress the alleged grievances set forth in the bill; and fails to show any facts sufficient to excuse the failure to make such request. 3. Because the alleged wrong sought to be redressed, is a wrong to the corporation, the Woodlawn Cemetery Company; and said bill fails to show that complainants, prior to the filing thereof, made any efforts with the stockholders of said corporation to induce remedial action on their part, in the name of the corporation, and fails to show any facts sufficient to excuse such effort. 4. For that the wrongs sought to be redressed are wrongs to the corporation, Woodlawn Cemetery Company, and no sufficient facts are averred or shown to entitle complainants to bring this suit in their names and in the names of other stockholders. 5. Because the wrong sought to be redressed by the bill of complaint is a wrong against the defendant corporation, the Woodlawn Cemetery Company, and no sufficient facts are averred or stated why said bill is not brought in the name of said corporation."

On the submission of the cause upon the demurrer of L. W. Johns, the chancellor rendered a decree overruling said demurrer. From this decree the defendant Johns appeals, and assigns the rendition thereof as error.

FRANK S. WHITE & SONS, for appellant.—The complainants have not shown by their bill a case which entitles them to maintain the present suit as individual stockholders to redress the wrongs complained of. There is no averment in the bill that complainants or either of them have ever asked any officer or member of board of directors of the corporation to have the alleged wrongs complained of redressed and failing, that they sought to obtain the relief by making application to the stockholders as a body.—*Montgomery L. & P. Co. v. Lahey*, 121 Ala. 131, and cases cited.

[Johns *et al.* v. McLester *et al.*]

(The facts averred in the bill would not entitle the corporation itself to maintain a bill. Therefore the stockholders of the corporation can not maintain such bill.—*Lockwood v. Fitts,* 90 Ala. 150; *Ansley v. Bank,* 113 Ala. 467; *Orendorff v. Tallman,* 90 Ala. 441; *Coal Co. v. Neill,* 87 Ala. 158; *Garrett v. Lynch,* 45 Ala. 204; *Smith v. Manfg Co.,* 29 Ala. 503; *Tusca. Manfg Co. v. Cox,* 68 Ala. 71; *Wolfe v. Underwood,* 96 Ala. 329.

R. H. THACH, *contra.*—The allegation of the bill brings the case fairly within the principles which courts of equity apply to raise a constructive trust upon the fraud of a person holding the legal title. The allegations fairly justify the inference that the conduct of Erswell, as president of the respondent corporation, in refusing to accept the loan, which he had been authorized to negotiate, was induced in some degree by L. W. Johns, one of the respondents and the purchaser at the sale under the deed of trust. Erswell's refusal to accept the money from VanHoose and Houghton on the day of the sale, is scarcely susceptible of any other explanation than that he was acting in the interest of Johns, and that his conduct was induced by some collusive arrangement between him and Johns.—2 Lewin on Trusts, 1161; *Hovenden v. Annesly,* 2 Sch. & Lef. 633; *Walthall's case,* 11 Vesey 638; *Williams v. Vreeland,* 32 N. J. Eq. 736; *Johns v. Norris,* 27 N. Y. 487; *Amer. F. L. M. Co. v. Sewell,* 92 Ala. 163; *Meyer v. Ins. Co.,* 5 Mo. App. 245; *Long v. McGregor,* 3 So. Rep. (Miss.), 241; *Keyser v. Gamon,* 95 Mo. 212; *Crampton v. Crane,* 97 Mass. 459.

TYSON, J.—It cannot be doubted that the alleged wrongs complained of in the bill in this cause, if cognizable at all, are such as could have been righted upon the complaint of the corporation, in which the complainants are stockholders. In other words, the purpose of this bill is to redress certain alleged injuries done the corporation, which are charged to be damaging to the rights of the complainants as stockholders.

19c

It is thoroughly well settled in this State that before a minority stockholder, or any number of them, can maintain a bill of this sort, he or they must make demand upon the managing officers or governing board of the corporation to correct the wrongs complained of, by legal proceedings or otherwise, and meeting with failure or refusal, he or they must next seek redress through the stockholders as a body. And such demand or request must be clearly averred in the bill. Of course this demand is not required when it is made clearly to appear that it would be refused, or that the litigation following would necessarily be under the control of persons opposed to its success, or when the persons constituting the governing board or a majority of them are the wrongdoers or under their control, and any effort to obtain redress through the stockholders would be unavailing for want of time or other cause. Of course, the excuse for not making the demand upon the governing board or if made upon that body, then the excuse for not seeking redress through the stockholders must be clearly and distinctly averred in the bill.—*Montgomery Light Co. v. Lahcy,* 121 Ala. 131, and authorities there cited.

There is not an averment in this bill, which can by any possible construction afford the remotest inference, that the stockholders of the corporation have ever been applied to by these complainants to redress the grievances complained of, nor is there even an inference, from the facts averred, that any good reason exists for not making the application to them. Indeed, we think it can be said that no proper demand is shown to have been made upon the directors. All that is shown in this respect is that one J. A. VanHoose, who was a stockholder, on the 17th day of October, 1899, addressed a letter to "Members of the Board of Directors of Woodlawn Cemetery Co." requesting them to immediately call a meeting of the board of directors and of the stockholders of the corporation for the purpose of redeeming the property of said company from the respondent, before the expiration of the time of redemp-

tion, and demanding that they take such immediate steps as are necessary in order to make such redemption. It is obvious from the language employed that the board of directors were not in session when this letter was written, nor is there one word in it calling their attention to the facts upon which the relief is predicated. And whether the stockholders, constituting the board of directors, when this letter was written, were the same persons composing that body when Van-Hoose appeared before them and informed them of his agreement with the respondent with reference to postponing the foreclosure sale is not shown. It may be, and we have the right to assume, that the Board was composed of entirely different stockholders who knew absolutely nothing of the agreement between Van-Hoose and the respondent and of the other facts alleged. But be this as it may, it is not shown that any governing body of the company were ever informed of the conspiracy alleged between the respondent and the president of the company. It is true that there is an exhibit to the bill ("H"), an unsigned letter of date January 20, 1900, purporting to have been addressed to "Director Woodlawn Cemetery Co." demanding that a bill be filed etc., also saying that "the chancery court has practically held that L. W. Johns and E. Erswell were guilty of such fraud in the sale  *   *  as to invalidate the same and it is absolutely necessary that this bill be filed in order to protect the interests of the company," but it is nowhere averred that this letter ever reached the director or the board of directors. This being true, it is not necessary to here decide its sufficiency or insufficiency as a demand. The grounds of the demurrer challenging the averments of the bill in these respects should have been sustained.

Reversed and remanded.