LESLIE P. VOORHEES, Plaintiff in Error, *vs.* TRUMAN A. MASON *et al.* Defendants in Error.

*Opinion filed April 21, 1910—Rehearing denied June 9, 1910.*

1. CORPORATIONS—*directors are trustees and cannot appropriate assets to their own use.* The directors of a corporation are trustees for the stockholders, and have no power to appropriate the assets of the corporation to their own use by voting to issue to themselves shares of stock and income certificates at half price.

2. SAME—*directors not entitled to dividends on stock unlawfully issued to themselves.* Directors of a corporation who have unlawfully issued certain shares of stock and income certificates to themselves have no right to receive dividends thereon, and they may be compelled to account to the corporation for the amount of dividends so received.

3. SAME—*the compensation allowed to director by his vote is illegal.* A resolution adopted by the directors of a corporation, voting to themselves a certain rate of compensation for selling income certificates, which was not a part of their regular duties, is void, and while they are entitled to reasonable compensation for such services if of value to the corporation, yet they are estopped to claim as reasonable compensation more than the rate fixed by the resolution.

4. SAME—*when directors should be required to account to corporation and not to stockholder.* Where the directors of a corporation who have illegally appropriated stock and income certificates to their own use and unlawfully received and retained dividends and commissions decline to bring suit against themselves, in the name of the corporation, for an accounting, a stockholder may maintain a bill for an accounting to the corporation for the full amount due and not merely for an accounting to himself for his *pro rata* share.

5. SAME—*when a bill for accounting to a foreign corporation may be brought in Illinois court.* The mere fact that a corporation is organized in a foreign State does not preclude an Illinois court from taking jurisdiction of a bill by a stockholder to compel directors who are residents of Illinois to account for and re-pay to the corporation assets claimed to have been illegally appropriated by them, even though it may be necessary for the Illinois court to interpret and apply the laws of the foreign State, which are alleged in the bill and proved.

FARMER, C. J., and VICKERS and COOKE, JJ., dissenting.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding.

BORMAN & McGRATH, for plaintiff in error.

C. E. ANTRAM, and J. L. O'DONNELL, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the plaintiff in error, Leslie P. Voorhees, against the defendants in error, the Joliet Tropical Plantation Company and six of the seven directors of said corporation, namely, T. A. Mason, J. O. Barrett, George B. Carey, J. F. Skeel, J. J. Allison and C. E. Antram, in behalf of himself and all other stock and income certificate holders in said corporation, to require the said directors to pay to the corporation the full value of 180 shares of capital stock and 180 income certificates of the said corporation issued by said directors to themselves at fifty cents on the dollar, in payment of their services in the promotion of the corporate business of said corporation, and to require said directors to re-pay to said corporation the dividends which they had collected on one-half of said stock and income certificates issued to themselves, and to require said directors to account to and pay over to said corporation certain sums which it was averred said directors had unlawfully retained as commissions out of the moneys derived from the sale of certain shares of the capital stock and income certificates of said corporation sold by them. An answer and replication were filed and the cause was tried upon the pleadings and evidence, and the bill was dismissed by the chancellor for want of equity. From that decree the complainant prosecuted an appeal to the Appellate Court for the Second District, where the de-

cree was reversed and the cause was remanded to the circuit court, with directions to that court to state an account between the corporation and said directors, and to charge each director with the full value of the shares of stock and income certificates issued to him and with one-half of all the dividends received by him upon said shares of stock and income certificates so issued to him, and to decree that each director pay to the complainant such portion of the amount found due from the directors as the number of shares and income certificates owned by the complainant should bear to the total number of shares and income certificates issued by the corporation. The complainant has sued out a writ of error from this court to the Appellate Court to review the judgment of that court.

It appears from the pleadings and proofs that the Joliet Tropical Plantation Company was incorporated in the State of Delaware on the eighth day of July, 1902, by Gardner W. Kimball, of Wilmington, county of Newcastle and State of Delaware, and the defendant directors, Mason, Barrett, Carey, Skeel, Allison and Antram, and seventeen other persons, all of whom resided at Joliet, Will county, State of Illinois; that said Kimball at the time of such organization appeared personally and the other incorporators appeared by proxy; that on the 14th day of July, 1902, the stockholders of said corporation held their first meeting at Wilmington, Newcastle county, Delaware, Gardner W. Kimball appearing personally and the other stockholders appearing by proxy, and at said meeting a board of directors, consisting of Mason, Barrett, Carey, Skeel, Allison, Antram and Kimball, was elected; that the first meeting of the board of directors of said corporation was held on July 16, 1902, at Joliet, in Will county, and J. O. Barrett was elected president, J. J. Allison first vice-president, George B. Carey second vice-president, J. F. Skeel secretary, T. A. Mason treasurer and C. E. Antram counsel; that the board of directors established an office in

Joliet, and the record books and funds of said corporation have been kept at the Joliet office and the meetings of the board of directors of the corporation have been held at the Joliet office since that time; that while the charter powers of said corporation are very broad, its business since its organization has been the purchase and improvement, as a plantation, of 3200 acres of land in Old Mexico; that the capital stock of said corporation consists of $150,-000, divided into 15,000 shares of $10 each; that the by-laws of said corporation provide for the sale of the shares of stock of the said corporation at $10 per share, and that there shall be issued income certificates which shall be sold for $290 each, to stockholders only,—that is, each share of stock and one income certificate shall be sold for $300; that at the time the bill was filed, 1264 shares of stock had been issued (three of which shares had been given to Gardner W. Kimball, the non-resident director,) and 1261 income certificates had been sold; that on July 16, 1902, the following resolution was passed by the board of directors:

"*Resolved,* That in consideration of the large amount of labor and the weighty responsibility which devolve upon the first board of directors of this corporation, it is but just and proper that they should be allowed to purchase a limited number of income certificates at a special reduced price, such price to be net, without any commission or other allowance, except the $10 per share paid for shares of the capital stock should apply on the price of these income certificates, as in other cases.

"*Resolved,* That income certificates, not exceeding ten in each case, may be purchased by directors of the corporation at a net price of $150 each, including the $10 paid for the corresponding share of capital stock, provided such subscription is made not later than May 15, 1903. If taken on the installment plan the payments shall be $10 per share cash in sixty days, and the balance in monthly payments of [here follows the amount of the monthly payments, aggregating $140.]

"*Resolved,* That commissions on sales of income certificates be limited to ten per cent of such sales. When sold on installments the commission shall be payable as follows: To secretary, ten cents monthly as the payments are made, for fifty months, $5; to the general agent or director making sale, twenty-five cents out of each of first twelve payments, $3; fifty cents out of each of next forty-four payments, $22; total, $30."

—that on December 29, 1902, the board of directors passed the following resolution:

"*Resolved,* That in view of the heavy responsibility assumed by this board in purchasing the additional 2000 acres, guaranteeing the agreed payments and undertaking to manage the financing and development of the whole 3200 acres, it is deemed just and proper, and it is hereby ordered, that each director be permitted to subscribe for 20 additional shares, in addition to the 10 already authorized, at net price of $150 each, payable in seventy-eight monthly payments, each one-half the amount in regular schedule. Secretary's commission to be one-half the amount as in other cases, and no commission allowed for selling."

—that each of the defendants in error under said resolutions subscribed for 30 shares of stock and 30 income certificates, which aggregate 180 shares of stock and 180 income certificates, for which they either paid or obligated themselves to pay fifty cents on the dollar; that in the years 1904, 1905, 1906 and 1907 the corporation paid a dividend on each fully paid share of stock and income certificate, including the 180 income certificates which were issued to the board of directors; that on February 13, 1903, the selling price of each share of stock, with an accompanying income certificate, was advanced to $350 and the commission to $35; that the secretary of the corporation was named as selling agent of the stock and income certificates and the Illinois directors acted as sub-agents, and there was paid as commissions to the secretary and the Illinois directors for the sale of stock and income certificates $24,700; that the corporation purchased first 1200 acres and afterwards 2000 acres of land in Old Mexico, for which it paid $32,000; that on November 10, 1902, the complainant purchased of the corporation, through J. J. Allison, one of its directors, five shares of stock and five income certificates, at which time it was represented to complainant by Allison that the officers and directors of the corporation received no compensation for their services; that in 1904 the complainant ascertained for the first time that $54,000 worth of stock and income certificates had been issued to the six resident

directors at fifty cents on the dollar and that $24,700 had been paid to the secretary and directors as commissions upon the sale of stock and income certificates; that upon receiving such information he protested against the sale of said stock and income certificates to the directors at fifty cents on the dollar and to the payment of said commissions, and no action being taken by the board of directors, afterwards he served a written notice upon the directors calling upon them to proceed, in the name of the corporation, to recover from the resident directors the full value of said stock and income certificates and to recover back said dividends and to require the directors to account for said commissions, and no action being taken by the directors, he subsequently instituted this suit.

The constitution and statute of the State of Delaware governing the organization of corporations similar to the Joliet Tropical Plantation Company are fully pleaded and were introduced in evidence.

Five questions are raised upon this record: First, that the directors of said corporation had no power to issue to themselves 180 shares of stock and 180 income certificates for fifty cents on the dollar in consideration of their services in promoting the business of said corporation; second, that the said directors had no right to pay themselves dividends upon the stock and income certificates of said corporation which had been issued to them and for which they had paid no consideration; third, that said board of directors had no power to absolutely fix the value of their services for selling the said stock and income certificates; fourth, that the Appellate Court erred in holding that a court of chancery was powerless to direct that the directors pay to the corporation the full value of the stock and income certificates issued to them, and to require them to return to the corporation the dividends received by them upon stock and income certificates issued to them without paying their full value, and to require them to account for

the value of the stock which they had sold, without deducting from the amount received commissions for its sale, or at least requiring them to make a showing that the amount retained was reasonable compensation for the services performed; fifth, that a court of chancery in this State has jurisdiction to grant the complainant full relief, although the Joliet Tropical Plantation Company is organized under the laws of the State of Delaware.

The directors, within two days after the corporation was organized, passed a resolution whereby they voted to themselves 60 shares of stock and 60 income certificates, of the value of $18,000, for $9000, and on the following 29th day of December they voted to themselves 120 more shares of stock and income certificates, worth $36,000, for $18,000. In other words, the directors, within six months after the corporation was organized, had appropriated to themselves 90 shares of the stock and 90 income certificates of the corporation, of the value of $27,000. This was, in effect, giving to themselves this large amount of stock and income certificates, as they had no valid claim against the corporation for services rendered to the corporation which they could enforce against the corporation or against its stockholders. The directors of a corporation are trustees for the stockholders, and the directors of this corporation had no power to appropriate the assets of the corporation to their own use. *Brown* v. *DeYoung,* 167 Ill. 549; *Hooker* v. *Midland Steel Co.* 215 id. 444.

The directors withdrew from the treasury of the corporation, dividends (upon the 90 shares of stock and 90 income certificates which they had voted to themselves,) in each of the following years: 1904, 1905, 1906 and 1907. The stock and income certificates of the corporation upon which these dividends were paid were unlawfully issued to the directors, and it is clear the dividends paid by the directors upon those shares of stock and income certificates to themselves were wrongfully paid. The Appellate Court

did not, therefore, err in requiring the directors to account to the corporation for the full value of said stock and income certificates and to require the directors to re-pay the dividends which they had unlawfully withdrawn from the treasury of the corporation.

The by-laws of the corporation provided that "the secretary shall be secretary of the board of directors and of the standing committees. He shall be general sales agent of stock and income certificates." Each director, other than Kimball, held an office in the corporation, and at the first meeting of the board of directors was passed a resolution "that commissions on sales of income certificates be limited to ten per cent of such sales," and that of the commissions paid upon the sale of stock and income certificates, $5 be paid to the secretary and $25 "to general agent or director making sale," and the total amount of commissions on sales of stock and income certificates retained or paid from the proceeds of sales was $24,700. It was doubtless contemplated at the time said resolution was passed that the stock and income certificates of the corporation would be sold by the directors, and by their own votes they fixed the value of their commissions for making such sales. We think, therefore, the resolution fixing the amount of commissions which the corporation should pay to its secretary and directors for placing its stock and income certificates was not conclusive upon the corporation. (*Fritze* v. *Equitable Building and Loan Society,* 186 Ill. 183; *Adams* v. *Burke,* 201 id. 395.) The law is well settled in this State that compensation voted to an officer of a corporation is illegal if the resolution fixing the compensation is carried by his vote. (*McNulta* v. *Corn Belt Bank,* 164 Ill. 427; *Fritze* v. *Equitable Building and Loan Society, supra; Adams* v. *Burke, supra.*) If, therefore, the resolution fixing the amount of commissions which should be paid for selling stock and income certificates by the board of directors was void, the directors could not rightfully retain commissions

for such sales by virtue of said resolution. The services of the secretary and other officers of the corporation in making sales of stock and income certificates were of value to the corporation, and upon proof of the value of such sales, regardless of the resolution, they may rightfully be allowed compensation for making such sales,—that is, allowed such sum for such services as the same are reasonably worth, not to exceed the amount fixed by the resolution,— it being our view that the resolution having been passed for the express purpose to authorize the directors to sell stock and income certificates and to receive commissions for such service, and that resolution having been adopted by the votes of the directors who were to benefit from its adoption, it was void, and that such directors could only recover what their services (their services in that behalf being outside of their duties as directors or officers) were reasonably worth, but that they having made said sales while the resolution which had been passed by their own votes was unrescinded, they should be estopped to claim that they were entitled to receive more in the way of commissions for making said sales than the amount fixed by their own votes; that while the resolution was not binding upon the corporation, it was binding, by way of estoppel, upon the directors.

It having been held that the directors should account for the full value of the stock and income certificates which they wrongfully issued to themselves, the dividends which were paid to them and the commissions retained by them on sales of stock and income certificates, less a reasonable compensation for making such sales, the question arises, should they be required to account to the corporation and to pay over to the corporation the amount which they owe the corporation, or should they only be required to pay to the complainant, as was held by the Appellate Court, his *pro rata* share, as stockholder, found to be due the corporation by said directors? The bill in this case was filed to

require the directors to account to the corporation and not to account to the complainant, and the complainant having called upon the directors to account to the corporation, and they having declined to sue themselves in the name of the corporation, the bill for an accounting between the directors and the corporation was rightfully filed by the complainant as a stockholder. (*City of Chicago* v. *Cameron,* 120 Ill. 447; *Bruschke* v. *Der Nord Chicago Schuetzen Verein,* 145 id. 433; *Johns* v. *McLester,* 137 Ala. 283; 97 Am. St. Rep. 27, and note on p. 30.) We think, therefore, the rule announced in *Chicago Macaroni Manf. Co.* v. *Boggiano,* 202 Ill. 312, should be applied, where it was held funds withheld by an officer of a corporation as compensation for services for which no compensation can be lawfully allowed should be accounted for to the corporation and not to the stockholder filing the bill, rather than the rule announced in *Brown* v. *DeYoung, supra,* relied upon by the defendants in error.

The question has been raised whether a court of chancery sitting in this State has jurisdiction over the subject matter of this suit, as it is said to require the directors to account in this case will involve a controversy relating to the internal management of the affairs of the Joliet Tropical Plantation Company, a corporation organized under the laws of a foreign State, which is foreign to the jurisdiction of the courts of this State. This bill set out the constitution and statute of the State of Delaware, and the question of jurisdiction of the trial court to hear and determine the case was not raised by the answer or otherwise, in any manner. The evidence shows that the persons, with the exception of Kimball, who organized the corporation are residents of Joliet, in this State; that the Illinois stockholders, at the first meeting at Wilmington, in the State of Delaware, appeared by proxy, Kimball, a resident of that State, being the only person connected with the corporation who was personally present at that meet-

ing; that the first meeting of the board of directors was held in Joliet; that the corporation has an office in Joliet, where its directors reside and where they hold their meetings; that the books of the corporation and the funds of the corporation are kept in Joliet and that the plantation of the corporation is situated in Old Mexico; that the corporation has no property in Delaware and no representative there excepting the director to whom the corporation donated three shares of stock, and an agent, as required by the statute of that State, upon whom process can be served. In other words, it clearly appears that the only reason for organizing under the laws of Delaware was to obtain some advantage, or supposed advantage, under the laws of that State. Presumably the corporation was organized in that State mainly by reason of the fact that a corporation may be organized under the laws of that State for the purpose of owning, operating and dealing in real estate. The constitution and laws of Delaware were introduced in evidence, and no question was made upon the trial as to their validity or as to their interpretation. We think complainant, or the corporation, can have no relief in this case,— certainly no adequate relief,—against the directors of this corporation who have wrongfully caused to be issued to themselves a large amount of stock and income certificates of said corporation, and wrongfully caused to be paid to themselves a large amount in dividends upon stock for which they paid no value, and retained a large sum in commissions which apparently they should account for, unless such relief can be had in the courts of this State. All of the unlawful acts of the directors took place at Joliet. The stock and income certificates were there wrongfully issued, the dividends were there wrongfully paid and the commissions were there wrongfully collected and retained, and we are of the opinion the suit was properly brought in this State. If this suit had been brought by the corporation,

clearly it would have had to be brought in Illinois, where the directors reside, and as the suit is brought on behalf of the corporation, the forum must, we think, be the same, although the bill is filed in the name of the complainant as a stockholder. In Beale on Foreign Corporations (sec. 309) it is said: "Where proceedings are instituted against officers of a corporation for an accounting and a restoration of property wrongly abstracted by them from the corporation, a bill may be brought in any jurisdiction where the officers are found. * * * The right of the plaintiffs, as stockholders, to compel a restoration by the officers to the corporation is co-extensive with the right of the corporation itself. Surely the corporation would not be confined to the courts of the State which created it, but could pursue its officers in whatever jurisdiction it might find them, otherwise it would be remediless if those officers remained without the State." We think, therefore, the fact that the corporation was organized in the State of Delaware and that it may be necessary to interpret and apply the laws of that State is no ground for refusing to entertain jurisdiction where the offending parties reside in this State and the suit is brought in the name of a stockholder, for and on behalf of the corporation. *Mandel* v. *Swan Land Co.* 154 Ill. 177; *Bell* v. *Farwell,* 176 id. 489; Beale on Foreign Corporations, sec. 309.

The decree of the circuit court and the judgment of the Appellate Court will be reversed, and the cause will be remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

FARMER, C. J., and VICKERS and COOKE, JJ., dissenting.