WILLIAMSON v. MISSOURI–KANSAS PIPE LINE CO. et al.

No. 4676.

Circuit Court of Appeals, Seventh Circuit.

Feb. 29, 1932.

504

This bill was brought by appellant, a citizen of Illinois, as a stockholder of Missouri-Kansas Pipe Line Company, against that company and Frank P. Parish & Co., each company being a Delaware corporation. The appellees will be referred to hereinafter as M-K Company and Parish & Co., respectively.

The bill was brought on behalf of appellant and of all other stockholders of M-K Company who might choose to join in the prosecution and share the expenses, but no other stockholders joined.

The following facts are alleged in this complaint:

One Frank P. Parish, in May, 1928, caused M-K Company to be organized as a utility and holding company, and later caused Parish & Co. to be organized for the express purpose of selling M-K Company's capital stock and for the further purpose of having a separate corporate entity which could be controlled by him and which would permit him to derive secret profits through the sale and manipulation of M-K Company's stock.

Neither appellee is doing any business nor has any office in Delaware, except such as is of necessity required to maintain corporate existence. Each is licensed to do business in Illinois and since their respective organizations has maintained offices in Chicago, where their principal businesses are now located and transacted and all their records and books are kept, and in which city they have assets and property. Many of the officers and employees of M-K Company, including its president, several vice presidents, and directors, are residents of Chicago and citizens of Illinois.

The capital stock of M-K Company consists of 5,000,000 shares of $5 par value common stock and 5,000,000 shares of $1 par value class B stock, all of which is listed on the Chicago Stock Exchange and on the New York Curb and has been actively traded in on said exchanges. Prior to February 17, 1930,

the capital stock of M-K Company consisted of 10,000 shares of 7 per cent. preferred $100 par value stock and 700,000 shares of $5 par value common stock.

Shortly after the organization of the two corporations, Parish, in order to derive secret and illegal profits for himself and for Parish & Co., which he owned and controlled, caused three certain contracts to be entered into between appellees—the said Parish being president of each—by virtue of which contracts, dated respectively January 16, April 16, and May 13, all in the year 1930, Parish & Co. purchased 1,164,448 shares of M-K Company stock at prices ranging from $20 to $29 per share; and for the total consideration of $31,788,960, which Parish & Co. agreed to pay, and, by virtue of said contracts, Parish & Co. also acquired the exclusive right to purchase a great portion of the capital stock of M-K Company.

Immediately after the execution of the contracts referred to, Parish embarked upon a plan to enrich himself and Parish & Co. by the sale of said stock, through means of false and misleading financial statements and high-pressure salesmanship, which sale was effected by subsidizing financial agencies and papers and by artificially manipulating markets. Shares of stock were not sold by Parish and Parish & Co. directly to the public, but to "Associate Dealers," under written agreements which provided for excessive commissions and compensation upon condition that the stock would remain in the ownership and possession of such "Associate Dealers" or their customers for at least ninety days, during which time it could not be returned to the general market. As a result thereof Parish and Parish & Co. were thereby given control of the entire market situation and had a monopoly of the market supply of the stock during the course of the stock operations; and the investing public, including appellant, was unable to ascertain the real value of the stock, and was thereby led to and did believe that the real value was the artificial price thus created. As a result of such activities the market price of such stock increased from $20 per share on February 1, 1930, to $40 on June 16, 1930. About this time Parish and Parish & Co. withdrew their artificial support of the stock, and the market price on the various exchanges dropped to $15 and later to $5 per share.

As additional means of furthering the plan, Parish and Parish & Co. caused M-K Company, at different times, to vote and declare stock dividends which at those times the conditions of M-K Company did not warrant, and which dividends were, in fact, distributions of capital. In order to inspire public confidence and fraudulently to justify and account for alleged expenditures of large sums of money, Parish and Parish & Co. announced that M-K Company had from time to time acquired many subsidiary companies, when in fact they were largely paid for with M-K Company stock and very little money was used for that purpose; and the only subsidiary of real value thus acquired was the Panhandle Eastern Pipe Line Company, referred to hereinafter as Panhandle Company, which represented at least 95 per cent. of the assets of M-K Company. Since purchasing the Panhandle Company stock, a 50 per cent. interest thereof was sold by M-K Company to Columbia Oil & Gasoline Corporation, referred to hereinafter as Columbia Corporation, through the machinations of Parish and Parish & Co., who controlled and dominated the board of directors of M-K Company. Control of the Panhandle Company was thereupon vested in the Columbia Corporation by permitting the latter to name five of the nine directors, and by giving to the Columbia Corporation an option to purchase an additional 20 per cent. of the stock of Panhandle Company at an inadequate consideration. In connection with said sale of stock to Columbia Corporation various illegal payments were made by Parish and Parish & Co. and M-K Company out of the funds of the last-named company, including more than a million dollars which are alleged to have been paid on account of political purposes and graft.

As a condition precedent and as an inducement to the sale of the M-K Company stock, it was represented to appellant by Parish and Parish & Co. that at no time would any funded indebtedness be permitted to be placed against M-K Company or its assets which would have priority over the stock interests of appellant and the other stockholders; but secretly and fraudulently, and in violation of such representation, Parish and Parish & Co. caused a resolution to be passed by M-K Company authorizing a funded indebtedness of $20,000,000 to be created in favor of National City Company, to be secured by a first mortgage on the property of Panhandle Company, which authorization has been partially consummated. In accomplishing such result a commission was paid to National City Company of $2,000,000 in cash and 200,000 shares of the capital stock of M-K Company, which stock was then represented by Parish and

Parish & Co. to be worth $20 per share. As a further commission for the same transaction, one Maguire was paid $1,000,000 in cash and 125,000 shares of M-K Company stock.

The M-K Company voted to Parish a salary of $60,000 a year, which was exorbitant and illegal; and, about the time of the market collapse of the stock of M-K Company, that company canceled the contract obligations and liability of Parish and Parish & Co. under the stock purchase contracts above referred to, by virtue of which action M-K Company was left without money or cash resources to pay for labor and material which had been contracted for in order to extend new construction work, and thus necessitating the $20,000,000 loan above referred to.

During all the times referred to in the bill, since the organization of appellee companies, Parish has been president of each company, and the directors of each have been and are now under his domination and control, by virtue of which he has caused to be committed all the acts complained of; and he has been, and is now, conducting the affairs of appellees according to his own arbitrary will, to his own advantage and that of Parish & Co., and to the loss and disadvantage of M-K Company and its stockholders. The other directors have at no time interfered with Parish or attempted to prevent the mismanagement complained of, by reason of which domination and control on the part of Parish it is impossible to procure any action to be instituted by M-K Company with respect to the subject-matter of the bill, and a demand for such action would be unavailing.

The cancellation of the obligations of Parish and Parish & Co., the sale to Columbia Corporation, and the issuance of bonds, as above referred to, have not been consummated in some particulars, which, if consummated and carried out, will seriously jeopardize and damage appellant and the other stockholders of M-K Company, and render that company insolvent.

In the way of relief, appellant demands that appellees be restrained from paying, delivering, or disposing of any money, assets, or other security until the further order of the court; from consummating or carrying into effect the cancellation of the Parish & Co. stock purchase agreements; from further carrying out any agreement for the sale of any interest in the Panhandle Company; or from doing any further act with reference to issuance of bonds until the further order of the court. Appellant also demands that

Parish & Co., and its officers and directors, be enjoined from interfering with the corporate functions of M-K Company and its subsidiaries; that it be ordered to return to M-K Company any funds, assets, or property as shall be adjudged to have been wrongfully received by Parish & Co., and to pay whatever shall be due from it on that account; that M-K Company be enjoined from attempting to sell or dispose of any part of its property; and that a receiver be appointed to administer the assets, and for all necessary equitable relief.

Each appellee, under oath, filed a voluminous answer to the bill, the allegations of which are not necessary to be specifically set forth herein; but it is sufficient to say that each answer contains specific denials to certain allegations of the bill, as well as affirmative allegations which, if true, it may be admitted would constitute a complete defense to the alleged cause of action.

Appellant tendered and filed one hundred and seventy-eight interrogatories, which the court ordered Frank P. Parish, as president of each appellee, to answer under oath. Due to the fact that the court subsequently dismissed the bill, these interrogatories were not answered, but they elucidate the theory of the bill.

Paragraphs 35 and 36 of the answer of M-K Company, and paragraphs 34 and 35 of the answer of Parish & Co., allege respectively that there is a fatal want of essential and necessary parties, and that the alleged facts are insufficient to constitute a valid cause of action in equity.

On June 12, 1931, the court, on motion of attorney for M-K Company, ordered that the hearing on the points of law contained in the answer of M-K Company to dismiss be set for July 6, 1931.

On July 6, 1931, the court entered the following order:

"This cause coming on to be heard this day upon the bill of complaint herein and upon paragraphs 35 and 36 of the answer of Missouri-Kansas Pipe Line Company and paragraphs 34 and 35 of the answer of Frank P. Parish & Co., and the court having heard the arguments of counsel representing both sides and having read the bill of complaint herein and being fully advised in the premises, finds that said bill of complaint relates to the internal affairs and management of the defendant foreign corporations, and the court therefore declines to exercise jurisdiction of the subject matter involved herein, and

"It is hereby ordered that the bill of complaint filed in the above entitled cause be and the same is hereby dismissed."

Theodore E. Rein, of Chicago, Ill., for appellant.

Ralph M. Shaw, Harold Beacom, and John R. Nicholson, all of Chicago, Ill., for appellee Missouri-Kansas Pipe Line Co.

Clay Judson, of Chicago, Ill., for appellee Frank P. Parish & Co.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

It is quite apparent that the issues raised by paragraphs 35 of the answer of M-K Company and 34 of the answer of Parish & Co. were not passed upon by the trial court. Aside from the question of venue, the court did not pass upon the issues raised by paragraphs 36 and 35 of the respective answers of appellees. In other words, the court gave no opinion, nor was it required to do so, as to whether the bill alleged sufficient facts to constitute a cause of action in equity had the bill been filed in Delaware, the habitat of the corporations. The court merely held that the bill did not allege sufficient facts to warrant an exercise of the jurisdiction which it admittedly had. This ruling was based on the theory that appellees were foreign corporations, and that the bill relates only to the internal affairs and management of such corporations. If this ruling is permitted to stand, it must be on the theory that there is want of equitable facts pleaded to warrant the exercise of jurisdiction, and not on lack of jurisdiction. Burnrite Coal Briquette Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002.

■ In analogous cases some courts have referred to the exercise of such jurisdiction as a discretionary power of the trial court. If this be a proper characterization of such power, it is, at most, not an arbitrary one, but must be exercised fairly and soundly and be based upon the facts which are well pleaded, if the ruling is based upon the pleadings; or based upon the facts proven if the ruling is based upon evidence submitted. Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204; United States v. Meldrum (D. C.) 146 F. 390.

■ Except in cases involving the exercise of visitorial powers, the question is not strictly one of jurisdiction, but rather of discretion in the exercise of jurisdiction. The rule rests more on grounds of public policy and expe-

diency than on jurisdictional grounds; more on lack of power to enforce a decree than on jurisdiction to make it. Where the wrongs complained of are merely against the sovereignty by which the corporation was created or the law of its existence, or are such as require for their redress the exercise of the visitorial powers of the sovereign, or where full jurisdiction of the corporation and of its stockholders is necessary to such redress, the courts will decline jurisdiction. Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas. 74.

It is contended by appellees that the acts complained of involve internal affairs and management of a foreign corporation, and that no facts appeared from which the trial court could see that it could, as a matter of expediency, grant effective relief. Among the cases relied upon by appellees in support of these contentions are the following, which are typical: Wallace v. Motor Products Corp. (D. C.) 15 F.(2d) 211, 213; Maguire v. Mortgage Co. of America (C. C. A.) 203 F. 858; Chicago Title & Trust Co. v. Newman (C. C. A.) 187 F. 573; Parks v. United States Bankers' Corp. (C. C.) 140 F. 160; Sidway v. Missouri Land & Live Stock Co. (C. C.) 101 F. 481, 485; Leary v. Columbia River & P. S. Nav. Co. (C. C.) 82 F. 775.

■ A court of equity will not, as a general rule, administer the internal affairs of a foreign corporation. Chicago Title & Trust Co. v. Newman, supra; Wallace v. Motor Products Corp., supra; Sidway v. Missouri Land & Live Stock Co., supra.

■ Mr. Thompson, in his Commentaries on Corporations, vol. 6, par. 8011, says: "As a general rule, actions brought by stockholders, generally in equity, to restrain or redress frauds or breaches of trust committed by the directors or officers of the corporation, or by a majority of its shareholders in the management of its business and property, can only be brought in the courts of the State under whose laws the corporation was created. This rule rests partly on jurisdictional grounds, and partly on grounds of policy and expediency."

Referring to the reasons for such rule, he continues: "It is indispensable, in such an action, that the corporation should be made a party in its corporate name and character. This reason alone, in many cases, drives the stockholders to the forum of the State of the corporation, because service of process cannot be had upon the corporation in other jurisdictions. It also rests upon a consideration of the inexpediency of opening the doors

of the courts of the State to litigations in respect of rights depending upon transactions taking place outside the State and governed by foreign law. It rests upon the further consideration that, in many cases, by reason of the fact of the property of the corporation being situated outside the State, it will be impossible for the court to effectuate its judgment if it should render any. But it is obvious that many cases will arise where these reasons will not be controlling. Take, for instance, * * * a case * * * where a manufacturing corporation migrated with its entire business, corporate books, and personnel, from the State of its creation into another State, and there did all its business and held all its corporate meetings. Clearly, the courts of the State in which it had thus, * * * acquired a de facto domicile, would be better able to take jurisdiction of an action by its stockholders for the redress of grievances in respect of corporate management, than would a court of the jurisdiction from which it migrated."

Thus it is quite apparent that, aside from the question of jurisdiction, which in the instant case is admitted, the question as to whether the trial court should exercise jurisdiction is one of policy and expediency, regardless of whether or not the acts complained of involve the internal affairs and management of the corporation. In such instances courts are not warranted in declining to exercise jurisdiction merely because the act complained of involves internal affairs and management of the corporation; but it must further appear that to do so would be inexpedient or contrary to the policy of the law. Inexpediency may well be based upon comity, legal restrictions, lack of equity on the part of plaintiff, or lack of power on the part of the court to render or enforce an equitable decree for want of jurisdiction of property or parties; but, unless some such basis is apparent, we can see no reason why the court should decline to exercise jurisdiction which it admittedly has. In support of this principle we cite the following cases: Babcock v. Farwell, supra; Voorhees v. Mason, 245 Ill. 256, 91 N. E. 1056; Burnrite Coal Briquette Co. v. Riggs, supra; Fudickar v. Louisiana Loan & Inv. Co. (D. C.) 13 F.(2d) 920; Backus v. Finkelstein (D. C.) 23 F.(2d) 357; Krouse v. Brevard Tannin Co. (C. C. A.) 249 F. 538; American Creosote Works v. Powell (C. C. A.) 298 F. 417; Richardson et al. v. Clinton Wall Trunk Mfg. Co., 181 Mass. 580, 64 N. E. 400; Miller v. Quincy, 179 N. Y. 294, 72 N. E. 116; Cunliffe v. Consumers'

Ass'n, 280 Pa. 263, 124 A. 501, 32 A. L. R. 1348; Corry v. Barre Granite, etc., Co., 91 Vt. 413, 101 A. 38; State ex rel. Wisconsin Dry Milk Co. v. Circuit Court, 176 Wis. 198, 186 N. W. 732; Ganzer v. Rosenfeld, 153 Wis. 442, 141 N. W. 121.

We think the cases relied upon by appellees are not inconsistent with the foregoing principles. Chicago Title & Trust Co. v. Newman, supra, was decided by this court. The bill was filed in the state court of Illinois by Newman, who owned 42 per cent. of the stock, against Newman Clock Company and other defendants, who owned 58 per cent. of the corporate capital. The suit was brought for an injunction to prevent illegal corporate action feared by complainant, at the hands of the individual defendants, which it is alleged would affect complainant's interest as a stockholder. Other wrongs charged to have been committed by defendant Renshaw, consisting of neglect and fraudulent mismanagement, were against the corporation, but the opinion gives no information as to the nature of the wrongs charged. The company, Renshaw, and two other defendants were nonresidents, and the residence of no defendant is given; neither was there service of process upon any defendant. The prayer asked for an accounting, and to enjoin the directors' meeting in New York, and also for a receiver to prevent the removal of the corporate assets from Chicago to New York. The relief prayed, other than the receivership, related entirely to the internal affairs of the corporation, according to the statement of the opinion. The defendants appeared and a preliminary injunction was issued, and appellant was appointed receiver. Subsequently the cause was transferred to the federal court, and the receivership was continued. The corporation filed a demurrer and a motion to dismiss for want of jurisdiction, which demurrer was sustained, and the receiver was discharged and was ordered to return the property to the corporation and present its report. The receiver filed an application for fees for its services and those of its attorneys, and asked that it be permitted to retain the same. This was denied, on the theory that the court had no jurisdiction to appoint a receiver. This court on appeal held that the ruling was right, but that the reason assigned was wrong—that it was not a question of jurisdiction, but one of discretion in the exercise of jurisdiction; that the court had power to sustain a demurrer for want of equity, as it did; and that it was of no consequence, especially on appeal by the receiver, whether

or not the court assigned a wrong reason for doing so. The paucity of the facts as detailed by the court—and we must assume that they are true and as full as the bill would authorize—certainly warranted the court in holding that it was inexpedient to interfere with that corporation's internal affairs; and it is hardly fair to say that this court, by that decision, either held or intended to hold that in no instance would it interfere with the internal affairs or management of a foreign corporation at the suit of a stockholder.

In Wallace v. Motor Products Corporation, supra, plaintiff, a stockholder, on behalf of himself and all other common stockholders, filed suit against a New York corporation, its officers, and a majority of the stockholders, who were in control of the corporation. The bill alleged that defendants were reorganizing the corporation under the New York laws, which would effect a complete change in its internal corporate character and structure, to plaintiff's damage as a common stockholder. The prayer was that defendants be restrained from further steps relative to the reorganization or pursuant thereto, and that all previous steps be canceled and set aside; that all stockholders be placed in the same relative position as they were previous to the attempted reorganization; and that an accounting of profits and damages be granted. The court, on motion to dismiss the bill, remarked that it must now be regarded as settled law that, where the court has acquired jurisdiction over the parties to such a suit, it has jurisdiction of the subject-matter of such suit, even though such matter concerns internal corporate affairs, and held that the bill involved only internal affairs. The court further stated that the litigant was not to be excluded because he is a stockholder unless considerations of convenience, efficiency, or justice point to the domiciliary courts as the appropriate tribunals. Applying that principle the court said: "I have reached the conclusion that the questions involved in this suit can be more appropriately considered and determined by the courts of the state of New York than by this court, and that, for that reason, the present bill should be dismissed." It is quite obvious that the court based its ruling upon expediency. The Court of Appeals affirmed the decision as to the corporation, and reversed it as to the individual defendants and remanded the case for further proceedings against them. 25 F.(2d) 655, 658. That court said: "Assuredly an action to annul a corporate charter or to determine the validity of a corporate organization has to do with the internal affairs of the corporation. Such an action should not be entertained by a court sitting in another state from that in which the corporation was organized except, perhaps, upon a definite showing of fraud in the very creation of the corporation itself. * * * The suit will not be entertained as to any relief sought against those defendants in so far as it might involve interference with the internal affairs of the corporation."

We do not interpret this decision as intending to lay down a hard and fast rule, applicable to all equitable suits of like nature, to the effect that, where only internal affairs are involved, a suit will not be entertained unless there is a definite showing of fraud in the very creation of the corporation. To so interpret the decision would be to extend it far afield from the issue before the court. Each equitable suit must be determined upon its own facts. In that case the creation, or the reorganization, was the only thing that was attacked. The corporation was a creation of the New York laws, and, under the facts pleaded, it was almost, if not quite, imperative that the visitorial powers of the state which created it and recreated it should not be interfered with by the Michigan courts. There were no facts pleaded from which the court could have reasonably said that it would be expedient to permit the action, outside of the fact that it had acquired jurisdiction of the defendants.

Sidway v. Missouri Land & Live Stock Co., supra, was concerned with a stockholder's bill in equity against a solvent foreign corporation, the general purpose of which was to have a receiver appointed to conduct and manage its affairs for the protection of plaintiff. The complaint was directed clearly against internal management, which it was alleged had diminished the value of the stock and threatened further injury to such value. The directors and majority stockholders were nonresidents. A demurrer was sustained to the bill. The court said: "It may be that where the bill discloses a state of facts such as that the governing body, acting under the direction or control or in complicity with the managing stockholders, are doing some wrongful act to the injury of the minority stockholders, or in some way or fashion are illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, the restraining and corrective power of a court of equity could be appealed to."

It is quite obvious, and the court so held, that no such state of facts was pleaded in the case then before the court.

Maguire v. Mortgage Company of America, supra, was a minority stockholder's suit solely for the winding up, through a receiver, of the affairs of a foreign corporation and for the distribution of the assets which were within the jurisdiction of the trial court. There was no averment of insolvency. It was suggested by appellant that the assets might be wasted unless a receiver was appointed. The District Court appointed a temporary receiver, but conferred upon him the general powers of receivers. The Circuit Court of Appeals held that a federal court of equity has no jurisdiction over an original stockholder's suit against a foreign corporation for the appointment of a receiver to wind up its affairs and distribute its assets, but that adequate relief for the protection of assets may be had by way of ancillary receivership. The court remarked that there was nothing in the bill to show that an ancillary receivership would fail to afford the complainant adequate relief, and that therefore the court was not called upon to determine whether, under extraordinary circumstances, the District Court as a court of equity might intervene to protect the assets while awaiting action of the court of primary jurisdiction. In other words, there were no facts pleaded which could be said to raise the question of expediency, and the court, we think, quite properly set aside the order appointing the receiver, with instructions to dismiss the bill for want of equity.

Parks v. United States Bankers' Corporation, supra, relates to a minority stockholder's bill merely for the appointment of a receiver of a foreign corporation to dissolve the corporation and distribute the assets. There were no debts, and there was nothing to indicate insolvency or necessity for protecting assets. The court held there was no reason presented why the court should interfere with the internal affairs of the foreign corporation, and denied the motion for a temporary receiver.

In Leary v. Columbia River & Puget Sound Navigation Co., supra, the officers were party defendants against whom judgment was sought, and they were residents of a foreign state. The main objects of the suit were a receivership and to recover dividends which had not been declared on account of wrongful depletion of assets by the officers, but which should have been declared. The court sustained a demurrer to stockholder's bill on the theory that the acts complained of were purely internal, and that the court was powerless to effectuate a judgment against the officers on account of their nonresidence.

From a perusal of the decisions of the various courts we think there is manifested no disposition to strike down the general rule that courts will not interfere with the internal affairs or management of a foreign corporation. As a general rule it is indeed a salutary one, and is based on considerations which include convenience, power to effectuate the court's orders, public policy, and other kindred considerations; but, with the passing of time and events, facts have arisen in certain cases which have caused courts of equity to recognize exceptions to the rule, which are regarded quite as salutary as the rule itself. In the earlier days it was no doubt more common for corporations to incorporate in the state where they intended to transact their principal business, and where most of the assets were located and most of the directors and stockholders lived. Those facts gave rise to no necessity for an exception to the general rule. In later years, however, corporations have grown enormously, and in many, if not most, instances, we dare say, their business is not measured by the limits of any one state. It is now not unusual for the officers, directors, and stockholders to live in a foreign state, and even the entire business of the concern to be conducted outside of the state which gave the corporation birth. Such facts have led the courts to hold, in cases such as we are now considering, that the stockholder's bill will not be dismissed unless under the facts pleaded considerations of convenience, efficiency, or justice point to the domiciliary courts as the appropriate tribunals.

We do not wish to be understood as holding that the courts of this jurisdiction may exercise visitorial powers over the corporations of Delaware, for that is a power which all courts regard as most appropriate for the domiciliary courts to exercise; but we think that most of the relief sought in the instant case does not, or need not, require the exercise of visitorial powers, and we are convinced that much of the relief demanded does not involve the internal affairs and management of the corporation in the sense contemplated by the rule upon which appellees rely.

It must be borne in mind that this is not a suit against the directors or the controlling stockholders; it is a suit by a stockholder of M-K Company, a Delaware corporation, against that company and also Parish & Co., another Delaware corporation, and the relief,

in effect, is sought against Parish & Co. Grave charges are made in the bill against Parish & Co. as to its wrongful domination and control of M-K Company, by virtue of which M-K Company has ceased to function for the benefit of its stockholders and is functioning under the absolute control and for the exclusive benefit and enrichment of Parish & Co., to the damage of appellant and the other stockholders of M-K Company. The specific acts complained of are set forth in the statement of facts, and, so far as the question now before us is concerned, we think the bill contains sufficient facts to constitute a valid cause of action in equity. Kansas v. Colorado, 185 U. S. 125, 22 S. Ct. 552, 46 L. Ed. 838; Ralston Steel Car Co. v. National Dump Car Co. (D. C.) 222 F. 590.

Bearing upon the question of expediency, convenience, and power to effectuate a decree in case one should be rendered, each appellee has all of its books and records, its principal office, most of its business, many of its officers and directors, including its president, and part of its assets, within this jurisdiction, and neither is doing any business in Delaware, or maintaining any office in that state except as is necessary under the laws of Delaware to maintain its corporate existence. Each appellee is licensed to do business in Illinois, and has been served with process in this cause. Under the allegations of the bill we think that considerations of neither justice nor expediency point to the courts of Delaware as the appropriate tribunals to investigate and determine the charges made in the bill as against Parish & Co., and that the District Court has ample power to effectuate any judgment it may render, under the evidence, against Parish & Co. We think the trial court erred in declining to exercise jurisdiction.

Appellees, however, insist that in determining this question we should not be guided alone by the allegations of the bill, but that we should also consider the allegations of the verified answers. With this position we cannot agree. Appellees may not, by filing their answers, move to dismiss upon denials of the allegations of the bill, or by new matter set up in the answers. The motion must be heard and decided upon the allegations of the bill, as upon demurrer. Krouse v. Brevard Tannin Co., supra; Ralston Steel Car Co. v. National Dump Car Co., supra. We think that Heine v. New York Life Ins. Co. (D. C.) 45 F.(2d) 426, Id. (C. C. A.) 50 F.(2d) 382, is not in point. In that case there was no contention over what facts should be considered by the court in determining whether or not it should exercise jurisdiction; but the contention of appellant was that the court should have submitted the facts to the jury. Lewis v. Cocks, 90 U. S. (23 Wall.) 466, 23 L. Ed. 70, and Whitehouse v. Point Defiance, T. & E. Ry. Co., 9 Wash. 558, 38 P. 152, are clearly not in point. The case last referred to deals with an affidavit of defendant presented before answers were filed in opposition to the appointment of a receiver, which appointment, and nothing else, the court was then considering.

Two days before appellees filed their briefs in this court Parish & Co. filed in this court its motion in the alternative to dismiss the appeal as to it or to affirm the order of the District Court, on the ground that the issues raised as to it are now moot. The facts upon which said appellee relies to sustain this motion are contained in an affidavit of the vice president of that company which accompanied the motion, to the effect that shortly after this suit was instituted, and before either appellee had answered the bill, every share of the outstanding capital stock of Parish & Co. was indorsed in blank and delivered to M-K Company; that, after the decree of the District Court was entered and within ten days after appellant had filed his brief in this court, all of the certificates of stock of Parish & Co. were duly and regularly transferred on the books of that company to M-K Company; that neither before nor since the delivery of said certificates in blank to M-K Company has any distribution of assets or profits been made by Parish & Co., and since that time all assets of that company have been in the exclusive and untrammeled custody and control of M-K Company.

The allegations of the affidavit are not admitted by appellant, but are at least questioned by him. While this court may hear evidence on matters which have transpired since the entering of the decree, in order to determine whether the issue presented is moot, yet in the instant case we are not disposed to do so. The affidavit shows that this stock was transferred in blank and delivered to M-K Company shortly after the suit was filed and has been in the possession and under the domination of M-K Company ever since, yet not one word was said about it to the trial court. The only act that has occurred since the decree was entered is the transfer of the stock on the books of the company. The truth of the latter fact might easily be presented by affidavits and counter affidavits, but this is not all that is contained

in the affidavit upon which the motion is based. It alleges, among other things, that all assets of Parish & Co. have been in effect transferred to M-K Company. The truth of this statement might very easily depend upon whether the original stock had been paid for, and many other things, concerning which the affidavit is silent. Such considerations convince us that appellant is at least entitled to investigate the subject-matter of the affidavit, and this we think can best be done under the supervision of the District Court.

The motion to dismiss is overruled.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.