Arthur L. Lonergan, et al., Appellees, v. Crucible Steel Company of America, Wheeling Steel Corporation, Hunt Foods and Industries, Inc., and R. A. Aishton, Appellants.

Gen. No. 51,330.

First District, Second Division.

July 22, 1966.

W. McNeil Kennedy, Roy S. Kullby, Robert P. Howington, Jr., and Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, of Chicago (William H. Knoell, of Pittsburgh, Pennsylvania, of counsel), for appellants, Crucible Steel Company of America and R. A. Aishton.

Albert E. Jenner, Jr., Charles J. O'Laughlin, Richard P. Glovka, and Raymond, Mayer, Jenner & Block, of Chicago (William D. Randolph, of Fullerton, California, of counsel), for appellants, Wheeling Steel Corporation and Hunt Foods and Industries, Inc.

Max Wildman, John W. Kearns, Jr., Bernard F. Stewart, Kirkland, Ellis, Hodson, Chaffetz & Masters, and Kaplan & Kaplan, all of Chicago, and Feuerstein & Underweiser, of New York City, for appellees.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This interlocutory appeal comes from an order entered in the Circuit Court of Cook County April 26, 1966, granting a temporary injunction directing the defendants to adjourn the annual stockholders meeting scheduled for the following day until August 29, 1966. The order states that this adjournment "will permit sufficient time to correct the allegedly misleading solicitation material transmitted by management and the correction of other charged violations . . ."

The complaint alleged that each of the four plaintiffs, all Illinois residents, are shareholders in the Crucible Steel Company of America, hereinafter called Crucible, and that they have been shareholders at the times of all the transactions complained of. When this suit was filed, these four plaintiffs owned a total of 104,400 shares of Crucible common stock out of approximately 3,879,180 shares outstanding. The plaintiffs allege that they bring this action, "on behalf of themselves and representatively and derivatively be on behalf of themselves and all of the stockholders of Crucible similarly situated."

The complaint names as defendants, Crucible, Wheeling Steel Corporation, hereinafter known as Wheeling, Hunt Foods and Industries, Inc., hereinafter known as Hunt, and 46 individuals, officers or directors of the above-mentioned corporations or past directors of Crucible. Of the defendants only the three corporations and R. A. Aishton are before the court.

The complaint alleges the existence of a conspiracy to turn over the control of Crucible from the elected directors to a group of so-called outsiders for the purpose of "perpetuating themselves in office as directors and officers of Crucible for their own personal gain and profit and at the expense of Crucible and its other stockholders." It is further alleged that, "[d]efendants Hunt and Wheeling and their officers and directors, and in particular, defendant Simon, were extremely desirous of accomplishing their selfish objective of causing a merger between

294

defendant Wheeling and defendant Crucible whereby Wheeling would obtain control of Crucible. Defendants Hunt and Wheeling, as well as their officers and directors, and in particular, defendant Simon, realized that Wheeling was in serious business difficulties and had been operating at a substantial economic loss and that defendant Crucible with its tremendous assets and business capacity would be a very desirable company for defendant Wheeling to merge with to the detriment of Crucible." Excessive compensation to various individual defendants is also alleged in the complaint. The defendants who appeared, answered and the plaintiffs replied.

It seems to be uncontested that trading in the shares of Crucible on the New York Stock Exchange became unusually active early in January 1966. On January 4, it led all stocks traded with 247,700 shares being purchased and sold; trading was stopped by the middle of the afternoon. Joel Hunter, president of Crucible, became worried about this sudden activity in the stock of his corporation and feared an attempt was being made to take over Crucible. What in fact was the cause of this unusual spurt in trading and who actually were the purchasers has never been determined. In any event, by the end of that week, over 900,000 shares had been traded, which was more than half the total number of shares traded the previous year. Hunter contacted certain members of the board of Crucible to determine what would be the best course of action, and then contacted a Mr. Stinson, head of another steel company, to determine whether a merger between their two companies would be possible. Mr. Stinson chose not to consider the matter.

The evidence presented at the hearing below reveals that James H. Higgins, a member of the Crucible board, suggested that an attempt to contact Norton Simon might prove useful. Mr. Simon is a director of Hunt, and apparently has a reputation in financial circles as a gentleman of great business acumen. Hunt is a large

operating company with investments in such diversified areas as the food, paint, glass, can and cottonseed crushing businesses as well as the steel, railroad, printing, publishing and dental supply fields. Simon suggested that Hunter discuss the matter with Robert Morris, president of Wheeling Steel, a company in which Hunt had a large investment.

Hunter accordingly went to Wheeling, West Virginia, where he discussed Crucible's situation with Morris. A merger between the two companies was mentioned, but as far as the evidence shows, it never got past the most elementary discussion stages. Mr. Simon kept abreast of the Hunter-Morris conversations by telephone and it was eventually decided that Hunter and Morris should meet with Simon and members of Hunt's finance committee the following day.

In short, an agreement was finally reached whereby Hunt agreed to take a position in Crucible shares and in fact did invest a very large amount in these securities.

It apparently is not disputed that Simon suggested the formation of a finance committee for Crucible and also suggested that he be chairman of the committee. It is also undisputed that Simon and three of his associates were elected to the board of Crucible to fill vacancies which occurred when elected board members resigned to make way for them. These arrangements between the Hunt board and the Crucible board are claimed to be improper by the plaintiffs.

The plaintiffs also question whether adequate disclosure of these affairs was made to the shareholders of Crucible. The claim is made that the proxy solicitation material was not complete. Both the management proxy statement and the Rubin group proxy statement were filed with the Securities and Exchange Commission. No evidence was introduced to show that the Securities and Exchange Commission found anything misleading about any of the material.

The plaintiffs also allege, apparently to show a motive for the actions by the Crucible board, the fact that the corporation had been badly mismanaged for several years. As was made apparent by their briefs and their oral arguments before this court, one of the major points of contention concerns the conduct of Crucible's operations abroad. Apparently the question concerns the wisdom of beginning the operation in the first place, and also the manner in which the books were kept. We do not know where these books are, but we assume they are not in Illinois.

As we stated at the outset, a temporary injunction was granted by the Circuit Court directing that the shareholders meeting be postponed from April 27, 1966, to August 29, 1966, so that allegedly misleading solicitation material transmitted by management might be corrected, "and to permit solicitation by the plaintiffs of proxies already obtained by management and others held in so called street name."

The complaint also asks in addition to other relief that the defendants be forever barred from voting their shares in the election of directors, that the defendants be forever barred from acquiring, either directly or indirectly, Crucible shares, that the defendants be prohibited from voting any proxies they have or may hereafter acquire, and that the defendants Simon, Clumek, Morris and Rich be enjoined from acting either directly or indirectly as members of the board of directors of Crucible or any committee of directors of Crucible.

The complaint finally asks that Crucible recover from all the defendants the amount of 100 million dollars compensatory damages and 100 million dollars punitive damages.

The defendants have argued in the Circuit Court and here that Illinois courts should not take jurisdiction over this matter. No claim is made that the Circuit Court does not have jurisdiction over the three corporate de-

fendants and the one individual defendant before it, but it has been urged that jurisdiction should not be exercised because the courts of one state will not normally interfere with the internal affairs of foreign corporations. The plaintiffs, of course, urge that the Illinois courts should take this matter for a decision on the merits. Both sides cite Babcock v. Farwell, 245 Ill 14, 91 NE 683 (1910) in support of their propositions. That case dealt with a suit by a stockholder to have a contract between the corporation and certain defendants declared unconscionable and void. The substance of the acts lay in the allegations of fraud, and the plaintiff sought an accounting. The corporation was organized in England for the purpose of running a cattle ranch in Texas. The defendants were residents of Illinois and the corporation's main land office was in Chicago. The court stated as the general rule the proposition that the courts of one state will not determine controversies relating to the internal affairs of a foreign corporation. The court went on to say, however, that the rule had certain limitations, since the problem was not merely a question of jurisdiction, but of whether the particular court in which relief is being sought is the most appropriate forum to make the necessary adjudication. The opinion then gives several examples of cases where the courts have refused to take jurisdiction. In distinguishing the case before it from the preceding examples, the court said, "But here the relief sought substantially amounts to requiring resident directors of the corporation to restore to it such sums of money as upon an accounting they shall be found to have unlawfully diverted and retained from it. The corporation and all persons necessary to a decree adjusting the rights involved in the controversy have appeared in the cause. Such decree as may be rendered will be personal and may be enforced in the ordinary manner." Babcock v. Farwell, 245 Ill 14, 34, 35, 91 NE 683, 690.

In more recent years, the courts have made the rule somewhat more general by saying that where the corporation is foreign only in the sense that it was incorporated in another jurisdiction, the courts of the state of its domicile will take jurisdiction even where the suit deals with that corporation's internal affairs. Continental-Midwest Corp. v. Hotel Sherman, Inc., 13 Ill App2d 188, 141 NE2d 400 (1957), Fletcher, Cyclopedia of the Law of Private Corporations § 8427.

Crucible is a New Jersey Corporation with its principal place of business in Pittsburgh. Less than one percent of its assets, less than one percent of its employees and about three percent of its sales are in this state. None of its officers or directors resides here. It is by any test, a corporation foreign to this jurisdiction.

It remains for us to determine whether this suit would require the determination of matters concerning the internal affairs of this corporation. The plaintiffs have asked that certain defendants be prohibited from voting their shares, or proxies which they hold. They also ask that certain defendants be stopped from serving on the board of directors of Crucible. In addition, they seek a determination that the organization of the finance committee be held improper. The charge is also made that excessive salaries were paid to certain officers or directors of Crucible.

Among the examples given in the Babcock opinion, supra, of cases where a court should refuse to exercise jurisdiction is one where a suit is brought to restore a stockholder to his right to vote at annual meetings. It seems to us that if such an action as this would constitute interference in the internal affairs of a foreign corporation, then an action to restrain certain individuals from voting shares at the annual meeting should likewise be held to be interference in internal affairs.

Where the claim is made that directors of a corporation acted improperly in carrying out their duties, the courts have held that such determination deals with the internal affairs of a corporation. Sprague v. Universal Voting Mach. Co., 134 Ill App 379 (1907), Fletcher, supra, § 8429. It seems clear to us that the charge brought against the board of Crucible that it acted improperly in setting up the finance committee, that it acted improperly in trying to protect the corporation from what it believed to be raiders, that it voted certain salaries which the plaintiffs claim are excessive and that it mismanaged the corporation, all deal with the question of whether or not these men abused the powers given them as directors.

■ ■  Moreover, where it appears that a determination of the conflict between the parties will require an examination of the books and records of the corporation, a court may refuse to take jurisdiction where these books and records are kept in another state. Lubin v. Equitable Life Assur. Society, 326 Ill App 358, 61 NE2d 753 (1945). Here, there have been claims made that the corporation did not keep proper records on its operations in Italy. It also seems that this problem was a substantial cause in the bringing of this action. The books and records of Crucible are not in Illinois. We would be justified on this ground alone in the holding that the Illinois courts should not take jurisdiction of this suit. We hold, therefore, that the relief sought by the plaintiffs would require the courts of this state to make determinations concerning the internal affairs of Crucible.

Since we have concluded that the Illinois courts should not take jurisdiction of this question, it follows that our courts should not interfere in this matter by granting an injunction. We have no Illinois cases directly on this point. Milvy v. Austin, 89 NYS2d 27 (1949) dealt with a suit brought by a shareholder to compel the directors of a Delaware corporation to declare a dividend. There it was held that the New York courts would not

take jurisdiction over the action since it would involve the internal affairs of a foreign corporation, and held, therefore, that it would be improper under such circumstances for the New York courts to grant an injunction bearing on the action.

In addition, we note that other courts have refused to enjoin shareholder meetings of a foreign corporation or to enjoin the voting of shares on the grounds that such an injunction in itself would be interference with the internal affairs of a foreign corporation. In Sterling, Grace & Co. v. Seeman Bros., Inc., 29 Misc2d 561, 215 NYS2d 559 (1961), an action was brought by shareholders in the courts of New York to enjoin a meeting of a New Jersey corporation at which shareholder approval of a proposed merger with a New York corporation was to be sought. The court there refused to take the case under the doctrine of forum non conveniens, and also stated that the fact that the plaintiffs were residents of New York and that money judgments were being sought in addition to equitable relief did not take the case out of that doctrine. See also Fletcher, supra, § 2072.

While we do not hold that the enjoining of the shareholder meetings of foreign corporations is always improper, yet in this case, where all but one of the individual defendants is outside the jurisdiction of this court, where none of the acts complained of occurred in this state, and where the corporation's principal place of business is elsewhere, the granting of an injunction such as was granted here is improper.

Fletcher, supra, § 8429 directs the reader's attention to an article, Internal Regulation of Foreign Corporations, 29 Col L Rev 968 (1929) where the writer proposes five tests to be used in determining whether a court should refuse to take jurisdiction because the courts of the domicile can better take charge of the controversy. They are: (1) the type of relief demanded, (2) the amount of business done within the forum, (3) the amount of corporate property within the forum, (4) the residence

or presence of the directors or officers of the corporation within the jurisdiction, and (5) the presence of the corporate books and records within the jurisdiction.

The type of relief demanded here would require the courts to go into practically every facet of the conduct of the business of Crucible. The amount of business done in Illinois is not substantial when compared with Crucible's total sales; the same may be said of the corporate property here. None of the corporate officers or directors resides or is present in Illinois. The corporate books and records are not here. Under this test too, the Illinois courts should refuse to take jurisdiction over this case. The order is reversed.

Order reversed.

LYONS and BURKE, JJ., concur.