(Nos. 40114, 40133 cons.—

ARTHUR J. LONERGAN *et al.,* Appellants, *vs.* CRUCIBLE STEEL COMPANY OF AMERICA *et al.,* Appellees.

*Opinion filed June 22, 1967.—Rehearing denied Sept. 27, 1967.*

SCHAEFER, UNDERWOOD, and WARD, JJ., dissenting.

MAX WILDMAN, JOHN M. O'CONNOR, JR., JOHN W. KEARNS, JR., and KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, all of Chicago, for appellants.

W. McNEIL KENNEDY, ROY S. KULLBY, ROBERT P. HOWINGTON, JR., and POPE, BALLARD, URIELL, KENNEDY, SHEPARD & FOWLE, all of Chicago, (WILLIAM H. KNOELL,

of Pittsburgh, Pennsylvania, of counsel,) for appellees Crucible Steel Company of America and R. A. Aishton.

ALBERT E. JENNER, JR., CHARLES J. O'LAUGHLIN, THOMAS P. SULLIVAN, RICHARD P. GLOVKA, and RAYMOND, MAYER, JENNER & BLOCK, all of Chicago, (WILLIAM D. RANDOLPH, of Fullerton, California, of counsel,) for appellees Wheeling Steel Corporation and Hunt Foods and Industries, Inc.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a derivative action brought in the circuit court of Cook County by four shareholders of Crucible Steel Company of America on behalf of themselves and other shareholders of the corporation similarly situated. The defendants are Crucible, Wheeling Steel Corporation, Hunt Foods and Industries, Inc., and 46 persons who are, or were, officers or directors of the corporate defendants.

The plaintiffs, who own 107,900 shares of Crucible's 3,879,180 shares of outstanding common stock, are members of a shareholder's committee which has solicited proxies in an effort to acquire control of Crucible through the election of directors proposed by the committee. Morris J. Rubin, who owns 10,000 shares, lives in Skokie, and Dr. Harold M. Kass, who owns 400 shares, lives in Oak Park. Arthur J. Lonergan, who owns 41,500 shares and whose wife owns 3,000 shares, lives in Phoenix, Arizona. Dr. William H. Rosenbaum, who along with his wife own 56,000 shares, lives in Scottsdale, Arizona.

Crucible is a New Jersey corporation which is licensed to do business and does business in Illinois. It is known as a specialty steel manufacturer because it produces various alloyed steels. In 1965 its sales amounted to 313 million dollars of which over 10 million was in Illinois, the fifth largest State by quantity of sales out of 42 States in which it does business. Its principal offices and manufacturing facilities are in Pennsylvania, but it has two offices in Illinois

and a registered agent here. At the end of 1965 it had assets of $423,073,000 of which $2,749,000 were located in Illinois, and 13,133 employees, 84 of whom are employed in Illinois.

The State of incorporation of Wheeling Steel and Hunt Foods does not appear of record, but both are licensed to do business in Illinois. Hunt Foods has operating divisions which engage in the food, paint, can and glass business. It also has investments in various corporations and owns 11 or 12 per cent of the stock of Wheeling. Wheeling is engaged in the manufacture of steel.

The gist of plaintiffs' complaint, which covers some 46 pages of the abstract, is that the defendant officers and directors of Crucible were aware of plaintiffs' recent purchases of Crucible stock and their substantial ownership of the stock and also were aware of plaintiffs' dissatisfaction with the manner in which these defendants were conducting the business affairs of the company. In order to retain control of his position as president and director of Crucible, Joel Hunter entered into a conspiracy with Norton Simon, director and chairman of the Hunt Foods finance committee and chairman of the board of directors of Wheeling Steel. It is alleged that the *quid pro quo* of the conspiracy was the perpetuation of Hunter as president of Crucible at an increased salary for the merger of Crucible with Wheeling Steel which has been operating at a substantial loss. To carry out the conspiracy it is alleged that Hunt Foods has purchased Crucible stock and now owns in excess of 618,000 shares of its common stock. About this same time four vacancies on Crucible's board of directors (3 by resignation) were filled by Simon, Robert Morris, who is president of Wheeling Steel, Jack Clumeck, who is a director of Hunt Foods and Wheeling Steel, and Raymond Rich, who is a director of Hunt Foods. It alleges defendants are responsible for misleading, deceptive and incomplete statements in communications mailed to shareholders

of Crucible, particularly in that the communications failed to disclose assurances alleged to have been given to Joel Hunter that he would remain as President at an increased salary in consideration for supporting the merger between Crucible and Wheeling and failed to state that the real reason Simon and his associates joined the board of directors was to gain control for Wheeling Steel and Hunt Foods and effectuate the merger of Wheeling Steel and Crucible.

The complaint prayed: (1) for the issuance of temporary and permanent injunctions restraining the defendants from using the notice and proxy statement with respect to the shareholders' meeting of April 27, 1966, from calling an annual meeting of shareholders and submitting a slate of directors until the final determination of the issues set forth in the complaint, and a declaration that the call for the April 27 annual shareholders' meeting of Crucible Steel was void, (2) for the issuance of temporary and permanent injunctions restraining the defendants from voting for directors of Crucible, from acquiring additional shares of Crucible stock, from soliciting proxies from Crucible shareholders, and from acquiring further representation on Crucible's board of directors, and (3) for the issuance of temporary and permanent injunctions restraining the defendant Simon, and the other three persons described as his nominees, from acting as members of the board of directors of Crucible and directing them to resign as directors. It also prayed that Crucible recover from the defendants $100,000,000 compensatory damages, "together with punitive damages in at least the same amount."

The three corporate defendants and Richard A. Aishton, a former director of Crucible, were served with process and filed their answers. Each of these defendants deny the material allegations of the complaint and each raised the affirmative defense "that the plaintiffs by their complaint seek to cause this Court to interfere with the internal affairs

and management of defendant Crucible, a foreign corporation, organized under the laws of the State of New Jersey, that this Court is an inappropriate forum to entertain a suit interfering with the internal affairs and management of a foreign corporation; and that for this Court to exercise its jurisdiction as prayed by plaintiffs in this suit would be contrary to the public policy of the State of Illinois."

Plaintiffs moved for a temporary injunction and the trial court heard evidence on the motion for five days. Five witnesses testified in person, six evidence depositions were tendered and received and numerous exhibits were introduced by both sides. The court granted a temporary injunction "directing the defendants and each of them to adjourn the Annual Stockholders meeting heretofore scheduled for April 27, 1966 to August 29, 1966; which will permit sufficient time to correct the allegedly misleading solicitation material transmitted by management and the correction of other charged violations, and to permit solicitation by the plaintiffs of proxies already obtained by management and others held in so called street name."

The Appellate Court held that Illinois courts should refuse jurisdiction of the case and reversed the injunctive order of the trial court. (*Lonergan* v. *Crucible Steel Company of America,* 73 Ill. App. 2d 292.) This court granted leave to appeal and consolidated the case with plaintiffs' direct appeal in which it is claimed that the appellate court decision deprived them of their constitutional rights. On plaintiffs' motions this court has directed that the 1966 and 1967 annual meetings of Crucible's stockholders may not be held until the final outcome of this case in this court.

The basis of the Appellate Court's holding is "that the relief sought by the plaintiffs would require the courts of this state to make determinations concerning the internal affairs of Crucible." (73 Ill. App. 2d 292, 300.) From this it concluded that the Illinois courts should not take jurisdiction of the case.

In early cases the acceptance or denial of jurisdiction of derivative actions against foreign corporations turned on what the courts determined was or was not interference with the internal affairs of the corporation, (See *e.g. Babcock* v. *Farwell,* 245 Ill. 14; *Voorhees* v. *Mason,* 245 Ill. 256.) We feel that the acceptance or denial of jurisdiction of such actions should be decided under the doctrine of *forum non conveniens* and that interference with the internal affairs of a foreign corporation is only one factor in determining whether an Illinois court would serve the convenience of the parties and the ends of justice.

This was the approach used by the Supreme Court in *Koster* v. *Lumbermen's Mutual Casualty Co.,* 330 U.S. 518, 91 L. Ed. 1067, 67 S. Ct. 828. The court first observed, "This case involves the special problems of forum non conveniens which inhere in derivative actions, and which have been little considered by this Court. * * * *Rogers* v. *Guaranty Trust. Co.,* 288 U.S. 123, 77 L. Ed. 652, 53 S. Ct. 295, 89 A.L.R. 720, was a derivative action, but that feature of the case was given almost no attention and the emphasis was entirely on the extent to which it involved inquiry into the 'internal affairs of a foreign corporation,' certainly not the most distinguishing feature of these actions." 330 U.S. 518, 521-22, 91 L. Ed. 1067, 1072, 67 S. Ct. 828, 830.

The Court went on to state, "There is no rule of law, moreover, which requires dismissal of a suitor from the forum on a mere showing that the trial will involve issues which relate to the internal affairs of a foreign corporation. That is one, but only one, factor which may show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted. But the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." 330 U.S. 518, 527, 91 L. Ed. 1067, 1076, 67 S. Ct. 828.

In *Cotton* v. *Louisville and Nashville Railroad Co.*, 14 Ill.2d 144, we stated at page 159: "The decision as to whether the facts of a particular case warrant dismissal under the doctrine of *forum non conveniens* lies primarily within the discretion of the trial court. The trial court's discretionary action in retaining or declining jurisdiction is subject to reversal on appeal only where there has been an abuse of discretion." The question then is whether the trial court abused its discretion in retaining jurisdiction of this case.

Implicit in the doctrine of *forum non conveniens* is the fact there are two or more forums that can exercise jurisdiction but one which is better or best able to serve the convenience of the parties and the ends of justice. The defendants take the position that Illinois is not the most convenient forum; but they do not state which forum would be better, nor can we, based on the record before us, find which, if any, would be better. The apparent reason for their failure to suggest another forum is that their arguments against the circuit court of Cook County retaining jurisdiction could probably be urged in any other State the plaintiffs might choose.

Defendants first assert that there is a serious backlog of cases in Cook County which requires reasonable restrictions on shareholders litigation against foreign corporations. This same argument was rejected in *Cotton* v. *Louisville and Nashville Railroad Co.*, 14 Ill.2d 144. Here, as in the *Cotton* case, there is no evidence as to the condition of the courts' dockets in any other forum.

Defendants next argue the circuit court of Cook County could not grant all of the relief requested by plaintiffs. They point out that plaintiffs seek a money judgment in the amount of $200,000,000 in favor of Crucible against all other defendants, and they argue that the individual defendants who are not parties (with one exception) are necessary parties to any determination of monetary damages. The one

exception is Richard A. Aishton, an Illinois resident. The other 45 individual defendants are non-residents.

The only extra-territorial service so far attempted by plaintiffs was on defendant Higgins in Pennsylvania. Higgins' motion to quash has been filed but has not been argued in the trial court. Whether plaintiffs will be able to obtain jurisdiction over these non-resident individual defendants, or whether it is necessary at all, is not before us at this time. It is apparent nevertheless that these individual defendants reside in numerous states, such as Pennsylvania, West Virginia, Massachusetts, New York, Georgia, and California, and there is nothing to indicate that service of process could be obtained on all of them from any other State. In short, defendants have failed to show that any State could grant more relief than could be granted in Illinois.

Defendants also argue that there is no source of proof in Illinois and suggest that there is nothing provable by record or witness within Illinois. The record before us belies this suggestion. Richard A. Aishton, an Illinois resident and former director of Crucible, has already testified concerning the alleged deal between the presidents of Crucible and Hunt Foods.

The Appellate Court stated that a sufficient ground alone for declining jurisdiction was the fact that the books and records of Crucible are not in Illinois. We cannot agree and defendants do not assert this. The location of the books and records of a foreign corporation may, of course, be very relevant in determining the convenience of the forum. Defendants do not, however, claim that they are in any way precluded from putting on a defense in Chicago by reason of having to produce records there. On the contrary, they did produce numerous records and exhibits at the preliminary hearing for injunctive relief.

Defendants in their statement of facts suggest that Crucible's relationships with Illinois are not as strong as

with another State or States because of the amount of sales, property and employees here as compared with those elsewhere; its books, directors and officers are not here; and its directors and shareholders meetings are not held here. While they state these facts relate to the internal affairs doctrine "which is a branch of the comprehensive doctrine known as forum non conveniens," defendants simply do not point out or argue why Illinois is a less convenient forum for this action than that of another State.

The defendants do not argue and there is no proof that they cannot defend this suit in Chicago or that defense of the action there is vexing or harassing. The two principal individual defendants, Hunter and Simon, voluntarily appeared at the preliminary hearing and testified. Robert Mayer, Crucible's assistant controller, testified and laid the foundation for the introduction of documents and exhibits offered by defendants.

We hold, on the basis of the record before us, that the trial court did not abuse its discretion in retaining jurisdiction of this cause.

The Appellate Court reversed the injunction order on the basis that this action interfered with the internal affairs of a foreign corporation, and, therefore, it did not decide whether the injunction was properly granted. We have the entire record before us and the parties have argued this point. As stated in *Nelson* v. *Union Wire Rope Corp.*, 31 Ill.2d 69, at pages 112 and 113: "Aside from considerations going to the avoidance of multiplicity of appeals, there are in our opinion unique circumstances here which, as a matter of discretion and justice, impel us to use our powers on review to the utmost and to finally dispose of the case." We feel that the quoted language is equally applicable here.

Evidence submitted at the preliminary hearing shows Joel Hunter, president of Crucible, had corresponded with plaintiffs Lonergan and Rosenbaum, two substantial stockholders of the company, who evidently were not satisfied

with the company's performance. In early January, 1966, trading in shares of Crucible on the New York Stock Exchange became unusually active. On Tuesday, January 4, it led all stocks traded and its trading was stopped by the middle of the afternoon. Hunter was worried about a change in control of the company, and to avert a change, contacted Mr. Stinson, president of National Steel on Friday, January 7, to discuss a merger of the two companies. Stinson turned him down. The next day he went to Wheeling, West Virginia, to talk to Mr. Morris, the president of Wheeling Steel. The following day, Sunday, January 9, he and Morris flew to Los Angeles and met with Norton Simon, chairman of the board of Wheeling Steel and chairman of the finance committee of Hunt Foods.

On Monday, January 10, Hunt Foods began purchasing Crucible common and preferred stock. On Wednesday, January 12, a special meeting of Crucible's board of directors was called. Three of its directors resigned to make way for Simon and his three nominees, (there was already one existing vacancy). As heretofore noted, Simon, chairman of the board of Wheeling Steel, Morris, president of Wheeling Steel, Jack Clumeck, a director of Wheeling Steel, and Raymond Rich, a director of Hunt Foods, were elected to fill the vacancies. At this meeting and at the suggestion of Simon, the by-laws of the company were amended to abolish the executive committee; a five-man finance committee was created; Simon was made chairman of this committee at a salary of $4,166 a month and Clumeck and Rich were also placed on this committee. On Friday, January 14, another special meeting was called and a resolution to redeem Crucible's preferred stock was adopted. From Monday, the 10th, through Friday, the 14th, Hunt Foods purchased 14,900 shares of this preferred stock. At a regular board meeting on January 26, Hunter's salary contract was amended to raise his $75,000 a year minimum salary to $120,000 a year which he had received in the previous two years. The

amendment also extended his consulting arrangement from five years to 10 years at a salary of $25,000 per year.

The plaintiffs argue that Simon and his nominees are interested only in aiding Wheeling Steel which has been operating at a loss recently and that Hunter is interested only in perpetuating himself as president and a director of Crucible at an increased salary. They assert that management's proxy solicitation material does not make a full disclosure and that the disclosures made are misleading.

The defendants point out that adjournment of Crucible's annual meeting can be justified only if the shareholders were not adequately informed in order to exercise their voting rights. They then argue that management's proxy solicitation material was accurate and fair and that it had been cleared through the Securities and Exchange Commission. However, plaintiffs' proxy solicitation material, which apparently had also been cleared through the Commission, contained facts not in management's material. Defendants argue, nevertheless, that the shareholders have been fully advised because any facts not in management's solicitation material was contained in plaintiffs' material.

It is apparent from the injunctive order that the trial court felt plaintiffs had not gotten their story to the stockholders for he ordered that the annual meeting should be adjourned for 4 months "which will permit  *  *  *  solicitation by the plaintiffs of proxies already obtained by management and others held in so called street name." The plaintiffs' proxy material is dated April 14, 1966, but the record does not show when, if ever, this material was mailed by Crucible's transfer agent. The record does show, however, that two weeks before the annual meeting, on April 13, 1966, Crucible's general counsel sent a telegram to the Securities and Exchange Commission stating: "Crucible management objects to mailing under rule 14A-7 stockholders committee's proxy material in present form because of following statements among others which are untrue or

misleading within meaning of rule 14A-9." The telegram then listed various statements.

At the preliminary hearing Hunter, Crucible's president, first denied that he or anyone took any steps to prevent plaintiffs' proxy material from being mailed and said he knew of no telegram. When he was faced with the telegram sent to the SEC, he said he was familiar with it and that it was designed to correct misstatements in plaintiffs' proxy material. He was then asked if he had available to him any information, written, oral or otherwise, from his counsel or anyone else of any change made in the proxy as a result of the telegram. He said no.

Defendants also argue that the injunctive order is vague and indefinite because it refers to "allegedly misleading solicitation material transmitted by management and the correction of other charged violations." They assert in essence that without a finding that their solicitation material is misleading and what specifically is misleading, there is no basis for adjourning the annual meeting.

It is not, of course, the purpose of a temporary injunction to decide controverted facts or the merits of the case. (*H. K. H. Development Corp.* v. *Metropolitan Sanitary Dist.*, 47 Ill. App. 2d 46.) If there is a conspiracy between Hunter and Simon to benefit themselves to the detriment of the stockholders, then management's proxy material is misleading, but we cannot at this time make such a determination. The defendants are aware of what is allegedly misleading and the charged violations. The court found "that the plaintiffs have established a prima facie case, and they have convinced the court that there is a fair probability of ultimate success." Defendants have denied that their proxy material is misleading and the charged violations. The order does not direct them to do anything in this respect, it merely gives them an opportunity to correct any allegedly misleading material and charged violations if they see fit.

The granting of a temporary injunction is within the sound discretion of the trial court, and unless there is an abuse of this discretion, a reviewing court will not set it aside. (*Weingart* v. *Weingart*, 23 Ill. App. 2d 154.) From the record before us, we cannot say that the trial court abused his discretion.

The judgment of the Appellate Court is reversed and the judgment of the circuit court of Cook County is affirmed, and the cause is remanded to the trial court for further proceedings, including the entry of an order setting a new date for the annual shareholders meeting.

> *Appellate Court reversed,*
> *circuit court affirmed,*
> *and cause remanded, with directions.*

Mr. Justice Schaefer, dissenting:

Mr. Justice Underwood, Mr. Justice Ward and I are of the opinion that jurisdiction of this case should be declined under the doctrine of *forum non conveniens.*

Of the four plaintiffs, the two who have owned stock in Crucible for any appreciable length of time reside in Arizona. Of the two plaintiffs who reside in Illinois, one, Morris J. Rubin, acquired the 10,000 shares of stock that he owns between December 10, 1965, and January 10, 1966; on January 12, 1966, he announced the formation of a stockholders' committee. The other, Harold M. Kass, acquired the 400 shares that he owns on January 3, 1966. This action was commenced on March 23, 1966.

As the Supreme Court of the United States pointed out in *Koster* v. *Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 524, 91 L. Ed. 1067, 1074, the leading case concerning the application of *forum non conveniens* to stockholders' derivative actions in the Federal courts: "In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown. But where

there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."

Apart from the fact that the plaintiffs Rubin and Kass, who recently bought stock in Crucible and became members of a stockholders committee to solicit proxies in an effort to elect a new board of directors, reside here, Illinois has no connection with this case. Crucible is a New Jersey corporation. Its principal offices and manufacturing facilities are in Pennsylvania, and its stockholders meetings are required to be held either in New Jersey or in Pennsylvania. Its connections with Illinois, measured in terms of percentage of total sales, total assets and total employees located here, are minimal. None of the conduct of which the plaintiffs complain took place in Illinois. Illinois law will govern the rights of the parties only to the extent that its doctrines of conflicts of laws may be involved.

The defendants are three corporations and forty-six individuals. The three corporate defendants have answered the complaint. But jurisdiction has been obtained over only one of the individual defendants, Richard A. Aishton, a former director who lives in Illinois. Our "long-arm" statute provides in relevant part: "Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (a) The transaction of any business within this State; (b) The commission of a tortious act within this State; (c) The ownership, use, or possession of any real estate situated in this State * * *." (Ill. Rev. Stat. 1965, chap. 110, par. 17.) It is not suggested that any individual defendant transacted any business in this State

which gave rise to the cause of action asserted, or committed any tort in this State. The cause of action is not related to Illinois real estate. It is apparent, therefore, that the court can not obtain jurisdiction over the individual defendants unless they are personally served with process in Illinois.

The complaint, however, is aimed primarily at the individual defendants. The relief sought is drastic: injunctions to restrain the defendants from voting for directors, and from acquiring additional stock and further representation on Crucible's board of directors, and as to the defendant Simon and three other defendants described as his nominees, an injunction to restrain them from acting as directors of Crucible. Damages in the total sum of 200 million dollars are also sought. I am unable to understand the suggestion in the majority opinion that it may not be "necessary" to obtain jurisdiction over the nonresident individual defendants. Jurisdiction over them is particularly important because of the principle that corporations are not responsible for the wrongful acts of their officers or directors, unless done with actual or implied authority, or the corporation has accepted the benefits of those acts. See 19 Am. Jur. 2d Corporations, secs. 1256, 1266, 1427; C.J.S. Corporations, sec. 996.

The majority justifies retention of this case primarily upon the ground that it has not been shown that process can be validly served on *all* of the individual defendants in any other State. Even if it is a fact that no other court can obtain jurisdiction over *all* of the active participants in the alleged misconduct, that hardly seems to be a persuasive reason for insisting upon the retention of the case in a jurisdiction that can not acquire jurisdiction over *any* of them. If it be assumed that the conduct of the individual defendants was wrongful, it still would not follow that responsibility for that wrongful conduct can be imposed upon the stockholders of Hunt and Wheeling.

Although the majority opinion suggests that there is no forum better suited than Illinois to try the present action, it fails to take account of the fact that Pennsylvania is Crucible's principal place of business and that several individual defendants apparently reside there and are subject to the jurisdiction of Pennsylvania's courts. Crucible's corporate records are there, and much of the conduct of which the plaintiffs complain occurred in that State. The majority also state that "defendants do not * * * claim that they are in any way precluded from putting on a defense in Chicago by reason of having to produce records there." But a defense can be put on anywhere if the costs of moving records, documents and witnesses are paid. The question is not whether the possibility of a defense is precluded, but the fairness of the imposition of an unnecessary burden.

As the majority points out, we do not know the condition of the calendars in other jurisdictions in which this action might have been brought. The gross congestion of the jury calendars in Cook County is, however, a matter of public knowledge. And this court has been alerted to the alarming dimensions of existing and future delay in the disposition of equity cases. Many corporations engage in business in Illinois, and many of them have Illinois stockholders. To retain jurisdiction over a case like this, with which Illinois has no significant connection, will invite an influx of this type of litigation which consumes an inordinate amount of judicial time and energy both in the trial of the action and in the administration of the affairs of the corporations during its pendency.

With reference to the doctrine of *forum non conveniens* as applied to the maintenance of a stockholder's derivative action, the Supreme Court of the United States said in *Koster* v. *Lumbermans Mutual Casualty Co.*: "To entertain such an action places the forum in a position of responsibility toward the whole class which the plaintiff assumes to represent. * * * Thus, such a litigation brings to the

court more than an ordinary task of adjudication; it brings a task of administration; and what forum is appropriate for such a task may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself." 330 U.S. at 524, 525-26.

This court has assumed grave administrative responsibilities with respect to the management of Crucible. The order of the trial court made no findings as to the truth of the allegations of the complaint, but continued the 1966 annual meeting of the stockholders until August 29, 1966. The judgment of the appellate court directing dismissal of the action was entered on July 22, 1966. On July 29, 1966, the reconvening of the 1966 annual meeting was enjoined pending this court's final action in the case. Under the laws of New Jersey and its own by-laws, Crucible was required to hold an annual meeting of its shareholders on April 26, 1967. On April 6, 1967, however, another order was entered enjoining Crucible from conducting its 1967 annual meeting pending this court's final action in the case.

On June 15, 1967, Crucible filed a motion requesting leave to conduct a special meeting of its stockholders for the purpose of considering the issuance of additional capital stock. Affidavits in support of its motion emphasized the necessity of this action in terms of the orderly expansion of the business of the company and the maintenance of its competitive position. This court has not acted upon that motion.

The majority now reverses the appellate court and remands the case "to the trial court for further proceedings, including the entry of an order setting a new date for the annual shareholders meeting." For well over a year, without any determination of the truth of the facts alleged in the complaint but denied in the answers, the orderly conduct of the business of Crucible has been prevented.

In our opinion the judgment of the appellate court should be affirmed.

UNDERWOOD, and WARD, JJ., join in this dissent.